```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

GREGORY ALLEN SUTPHIN, SR.,        )
                                   )
                 Plaintiff,        )
                                   )
          v.                       )         1:24CV985
                                   )
KING N.C. POLICE DEPARTMENT        )
and COUNTY OF STOKES,              )
                                   )
                 Defendants.       )

### MEMORANDUM OPINION, ORDER, AND
### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on Plaintiff's Application for Leave to Proceed In Forma Pauperis (Docket Entry 2). The Court will grant the instant Application, for the limited purpose of recommending dismissal of this action, pursuant to 28 U.S.C. § 1915(e)(2)(B), as frivolous and for failure to state a claim.

### INTRODUCTION

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because his poverty makes it impossible for him to pay or secure the costs." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (internal quotation marks omitted). However, that statute also provides, inter alia, that "the court shall dismiss the case at any time if the court determines that . . . (B) the action . . . is frivolous or . . . fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2).

As to the first of those grounds for dismissal, "a complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). To make that assessment, the Court "appl[ies] common sense." Nasim, 64 F.3d at 954. The second, above-quoted ground for dismissal attaches if a complaint fails "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

In this case, Plaintiff purports "to bring forth a 42 U.S. Code [§] 1983 Civil TORT Action against King N.C. Police Department [(the "KPD")] and the County of Stokes." (Docket Entry 1 (the "Complaint") at 1; see also id. at 4 ("seeking $150,000 from the [KPD] for their [sic] unlawful violations of [Plaintiff's c]onstitutional [r]ights" and "also seeking $150,000 from [t]he County of Stokes for . . . hindering [Plaintiff's c]onstitutional [r]ights").) The Complaint begins by recounting Plaintiff's experience with the North Carolina Division of Motor Vehicles ("NCDMV") beginning on August 12, 2024, when he attempted "to renew [his] drivers license" (id. at 1), but could not "because of a 2019 DUI & Civil Revocation in King N.C. [as to which he] had to pay a restoration fee" (id.). According to the Complaint, when Plaintiff "informed the NCDMV Agent that the case was dismissed due to the

2

KPD['s] refus[al] to appear and provide evidence that would have proven [the KPD] had no 'Probable Cause' to approach [Plaintiff]" (id.), the "NCDMV Agent informed [Plaintiff that] 'No Probable Cause' was needed on the court records before [Plaintiff] can renew [his] drivers license and have the Civil Revocation fee removed" (id.). The Complaint further alleges:

> One of the NCDMV Agents also called [the] Stokes County Courthouse and explained the issue to them [sic], but the Stokes County District Attorney said they [sic] will not make any changes to correct the record. . . .
>
> [Plaintiff] also went to the Stokes County Courthouse to explain the issue with them [sic]. The Stokes County District Attorney and the Clerk of Court said they will not make any changes to the record . . . . [The] Stokes County District Attorney and Clerk of Court informed [Plaintiff that he] would have to hire an attorney to correct this issue. [Plaintiff] was also refused to be allowed to record [his] personal business with the Stokes County Courthouse to gather their words and information in the case . . . .

(Id.; see also id. (describing Plaintiff's inability "to hire a lawyer to correct problems that have arisen from the[] unlawful actions that prevent [him] from renewing [his] drivers license," as well as hardships he has suffered due to loss of drivers license).)

Next, the Complaint shifts to a discussion of the underlying incident from 2019 that resulted in the civil revocation of Plaintiff's drivers license. (See id. at 1-2.) Specifically, the Complaint alleges that, in the aftermath of Plaintiff's near-collision with a KPD police cruiser at a convenience store caused by the KPD officer's negligence (see id.), that officer (later

3

joined by a second KPD officer) arrested Plaintiff for DUI and roughly handled him, in a manner "violating [his c]onstitutional [r]ights" (id. at 2), with the harm "hav[ing] reappeared five years later" (id.), as "their unlawful actions [have] prevent[ed] Plaintiff] from renewing [his] drivers license" (id.).[1]

---

[1] The Complaint additionally describes a prior incident from "early 2014" (Docket Entry 1 at 2), in which the same KPD officer who caused Plaintiff's arrest in 2019 "attempted to accuse [him] of a DUI" (id.) and, due to "negligen[ce] in [that officer's] knowledge of CDLs and the NCGS, Chapter 20 Article 2C" (id.), "took [Plaintiff's] license" (id.), after which that officer "pulled [Plaintiff] over again and refused to let [him] go to work" (id.; see also id. ("[Plaintiff] went the next day to get [his] drivers license and [the same KPD officer] had [Plaintiff] pulled over again that same week without doing his due diligence . . . . [T]he situation escalated into another harsh verbal altercation. [That KPD officer] admitted to harassing [Plaintiff] by calling on another KPD [o]fficer to pull [Plaintiff] over. After several minutes of [that] tense interaction, [the KPD officers] left the scene and [Plaintiff] went to work.")). According to the Complaint, "[i]n 2016, [Plaintiff also] video recorded [the same KPD o]fficer [] and four or five other KPD [o]fficers violating [Plaintiff's] [c]onstitutional [r]ights." (Id. at 3.) On that occasion, Plaintiff allegedly "was at the Stokes County Fair speaking with a group of people at a political tent" (id.), when, "[s]uddenly, [that KPD o]fficer [] approached [Plaintiff] and told [him that he was] banned and ha[d] to exit the premises under threat of arrest without consulting the property owner" (id.; see also id. at 3-4 (describing events (A) from "February of 2019" which led Plaintiff to conclude that no ban prevented his presence at fairgrounds, and (B) from "September of 2019, after the DUI case was dismissed," when (while at "the King Fair") Plaintiff encountered second KPD officer involved in Plaintiff's DUI arrest earlier that year, who "told [Plaintiff that he would] be arrested if [he] d[id] not leave," after which Plaintiff "tried to inform [that officer] that [Plaintiff] was not banned" but nonetheless "complied and started walking to the parking lot," whereupon "four or five [KPD o]fficers violently attacked [Plaintiff] in front of hundreds of witnesses and arrested [him] for being drunk and disorderly and trespassing," which charges eventually got "dismissed by the [j]udge")).

4

> Subsequently (per the Complaint):
>
> During the 2019 DUI court case, . . . [Plaintiff] subpoenaed all of the [p]olice [b]ody cam footage and for [the KPD o]fficer [who instigated Plaintiff's arrest] to appear. [The two KPD officers involved in the arrest] did not appear at any of the court dates, and failed to provide the subpoenaed body cam footage to prove they had no probable cause in th[at] matter. The judge also paused the court session and ordered the Stokes County District Attorney to call [one of those KPD o]fficer[s ]. His phone was seemingly turned off . . ., [and] the [j]udge ordered the Stokes County District Attorney to call the KPD to inquire about [that o]fficer['s ] whereabouts. The District Attorney was informed by [the] KPD that the[ KPD] seemingly had no idea where [that o]fficer [] was and why he was not in court.

(Id. at 3.) Plaintiff also attached to the Complaint a copy of a dismissal form dated September 10, 2019, in which a state prosecutor in Stokes County dismissed charges against Plaintiff for "DWI" and "Intox & Disrupt." after the "State's motion[, presumably for a continuance, was] denied[ when a KPD officer was] not present/training." (Id. at 5.)

The Complaint asserts that, "[i]f the Stokes County District Attorney had handled the 2019 DUI case properly, and KPD would have produced all evidence, [Plaintiff] would have been proven innocent and [would have proven] the KPD had no probable cause in the matter." (Id. at 3.) In particular, Plaintiff has alleged that the subpoenaed body cam footage "would have shown the[ KPD officers'] actions [were] unlawful with no basis to approach [Plaintiff] and commit an injustice." (Id.; see also id. at 2 ("[The] Stokes County Courthouse has enabled [the] KPD to conceal

5

the evidence that would have proven [Plaintiff's] innocence in the matter. They [sic] chose to cover up and allow the case to be dismissed due to [the] KPD not appearing and help[ed] in keeping the police body cam footage concealed."), 4 (contending, in connection with request for damages against Stokes County, that Stokes County District Attorney "is upholding the injustices committed by the [KPD]").)

DISCUSSION

In reviewing this case under Section 1915(e)(2)(B), the Court should note first that Section 1983 "applies, by its terms, only to a 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory[,]' deprives a person of a constitutional or statutory right, privilege, or immunity." White Coat Waste Project v. Greater Richmond Transit Co., 35 F.4th 179, 189-90 (4th Cir. 2022) (emphasis added) (quoting 42 U.S.C. § 1983). The United States Supreme Court has held "that Congress did intend municipalities . . . to be included among those persons to whom [Section] 1983 applies." Monell v. Department of Soc. Servs., 436 U.S. 658, 690 (1978) (emphasis omitted). However, "a municipal agency is not an entity that may be sued. Furthermore, under North Carolina law, a police department is not an independent legal entity with the capacity to sue and be sued." Baker v. Durham Cnty. S.W.A.T. Team, No. 1:14CV878, 2016 WL 2621972, at *4 (M.D.N.C. May 5, 2016) (unpublished) (Webster, M.J.) (emphasis

6

added) (internal brackets, citation, and quotation marks omitted), recommendation adopted sub nom., Baker v. Durham S.E.T., No. 1:14CV878, 2016 WL 3747615 (M.D.N.C. July 11, 2016) (unpublished) (Osteen, C.J.). The Court thus should dismiss the Section 1983 claim(s) against the KPD "because th[at] entit[y] . . . is simply a component of the municipality, and, therefore, lacks the capacity to be sued." Id. (internal quotation marks omitted); accord, e.g., Scott v. City of Durham, No. 1:20CV558, 2021 WL 3856168, at *1 (M.D.N.C. Aug. 27, 2021) (unpublished) (Eagles, J.).

On the other hand, Plaintiff could have pursued Section 1983 claims "against the legal entity operating the [KPD], the City of [King]." Scott, 2021 WL 3856168, at *1; see also, e.g., Franklin v. City of Charlotte, 64 F.4th 519, 535 (4th Cir. 2023) ("Municipalities are 'persons' within the meaning of § 1983."). But, "[t]o hold a municipality liable for a constitutional violation under [Section] 1983, [ P]laintiff must show that the execution of a policy or custom of the municipality caused th[at] violation," Misjuns v. City of Lynchburg, 139 F.4th 378, 384 (4th Cir. 2025); "[t]his is referred to as *Monell* liability," id. (citing Monell, 436 U.S. at 694). Under Monell, "a municipality cannot be held liable simply for employing a tortfeasor," Riddick v. School Bd. of City of Portsmouth, 238 F.3d 518, 522 (4th Cir. 2000) (citing Monell, 436 U.S. at 691), as "[S]ection 1983 was not designed to impose municipal liability under the doctrine of

7

respondeat superior," id. at 523.  Moreover, "not every decision by every municipal official will subject a municipality to [S]ection 1983 liability."  Id.  "Therefore, to impose municipal liability . . ., [P]laintiff[] must identify municipal officials with final policymaking authority to implement the alleged policy [or custom that caused the constitutional injury]."  Id. (internal quotation marks omitted); see also Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999) (emphasizing that "official policy" does not arise from "episodic exercises of discretion in the operational details of government" (internal quotation marks omitted)).

Applying those legal principles, even if Plaintiff had sued the City of King (rather than the KPD), the Court should "find that [any] *Monell* claim [still would] properly [be] dismissed."  Blair v. Appomattox Cnty. Sch. Bd., 147 F.4th 484, 493 (4th Cir. 2025). Simply stated, the Complaint does not allege the existence of any policy or custom of the City of King that caused any alleged constitutional harm (see Docket Entry 1), and thus the Complaint "fail[s] to establish *Monell* liability even at th[e pleading] stage," Blair, 147 F.4th at 493.  Put another way:

> Critically lacking is any support for the proposition that [any KPD o]fficer . . . implemented an official government policy or custom.  As the Supreme Court has recently explained, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.  And "[courts] are not bound to accept as true a legal conclusion couched as a factual allegation." [Plaintiff's] allegations "do not permit [this Court] to infer more than the mere possibility of misconduct [by

8

the City of King]." This mere possibility is inadequate to subject the [City of King] to [Plaintiff's Section 1983] suit for monetary damages.

Walker v. Prince George's Cnty., 575 F.3d 426, 431 (4th Cir. 2009) (emphasis added) (internal brackets, citations, and some quotation marks omitted) (quoting Iqbal, 556 U.S. at 678-79).[2]

Likewise, Plaintiff can pursue a Section 1983 claim against Stokes County only where the conduct "that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [Stokes County]," Monell, 436 U.S. at 690, or a

---

[2] Any Section 1983 claim(s) against KPD officers in their individual capacities for conduct alleged in the Complaint would fail as time-barred. "The statute of limitations for all [Section] 1983 claims is borrowed from the applicable state's statute of limitations for personal-injury actions . . . ." Tommy Davis Const., Inc. v. Cape Fear Pub. Util. Auth., 807 F.3d 62, 66-67 (4th Cir. 2015). As a result, "[Section] 1983 claims arising in North Carolina are limited by the three-year period for personal injury actions set forth in [N.C. Gen. Stat.] § 1-52(5)." Id. at 67 (internal quotation marks omitted). "The limitations period for a [Section] 1983 claim begins to run when the plaintiff has a complete and present cause of action - in other words, when [the plaintiff] could have filed suit and obtained relief." Id. (internal brackets and quotation marks omitted). Given the Complaint's allegations (detailed in the Introduction) that the KPD officers' conduct occurred in 2019 (at the latest) and that dismissal of all resulting charges occurred no later than 2020, i.e., more than three years before Plaintiff filed this action on November 21, 2024 (see Docket Entry 1 at 1), a Section 1983 claim against the KPD officers would face dismissal for frivolousness, as "it appear[s] on the face of the [C]omplaint . . . that the applicable statute of limitations bars [any such claim]," Todd v. Baskerville, 712 F.2d 70, 74 (4th Cir. 1983); see also Nasim, 64 F.3d at 956 ("[T]he [district] court found that [the plaintiff's claim] was barred by the applicable . . . statute of limitations. In these circumstances, the district court did not abuse its discretion in concluding that the action was frivolous . . . .").

9

Stokes County "'custom' even though such a custom has not received formal approval through [Stokes County's] official decisionmaking channels," id. at 691; see also id. (holding that local government unit "cannot be held liable under § 1983 on a respondeat superior theory" (italics omitted)). The Complaint states no claim against Stokes County because it makes no allegation that a policy or custom of Stokes County "cause[d anyone] to violate [Plaintiff's] constitutional rights," id. at 692. (See Docket Entry 1.) In that regard (as the Introduction shows), the Complaint seeks to impose liability on Stokes County for actions (or inactions) of the Stokes County District Attorney's Office and the Stokes County Clerk of Court's Office. Yet, those offices constitute arms of the State of North Carolina (not of Stokes County). See, e.g., Morris-Wilkins v. Joyner, No. 5:24CV462, 2025 WL 2399241, at *12 (E.D.N.C. July 7, 2025) (unpublished) ("[Court c]lerks are state officials under [] North Carolina law, not county officials." (citing N.C. Const. art. IV, § 9(3) and N.C. Gen. Stat. §§ 7A-40 & 7A-102(a))), recommendation adopted, 2025 WL 2798504 (E.D.N.C. Sept. 30, 2025) (unpublished); N.C. Const. art. IV, § 18(1) ("The District Attorney shall . . . be responsible for the prosecution on behalf of the State of all criminal actions in the Superior Courts of his district, perform such duties related to appeals therefrom as the Attorney General may require, and perform such other duties as the General Assembly may prescribe." (emphasis added)).

10

That fact <u>not only</u> (A) defeats Plaintiff's Section 1983 claim(s) against Stokes County, <u>see, e.g.</u>, <u>In re Kunstler</u>, 914 F.2d 505, 514 (4th Cir. 1990) (describing "assertion that the district attorney 'serves as the criminal prosecution arm of [North Carolina c]ounty and as such makes policy in . . . criminal prosecution matters for [that c]ounty'" as "misstatement[] of fact" because, "[i]n fact, [North Carolina law] indicates that the [d]istrict [a]ttorney is an officer of the state, not an agent nor an employee of the county"); <u>Wiley v. Buncombe Cnty.</u>, 846 F. Supp. 2d 480, 487 (W.D.N.C.) ("To the extent that [the p]laintiff argues that [a North Carolina c]ounty is responsible for the actions of [a county c]lerk [], this claim must also fail."), <u>aff'd</u>, 474 F. App'x 285 (4th Cir. 2012), <u>but also</u> (B) precludes any such claim(s) against the Stokes County District Attorney's Office or the Stokes County Clerk of Court's Office, as "*Will* [*v. Michigan Department of State Police*, 491 U.S. 58 (1989),] prohibits a [Section] 1983 action against [such arms of the state]," <u>Manning v. South Carolina Dep't of Highway & Pub. Transp.</u>, 914 F.2d 44, 48 (4th Cir. 1990); <u>see also</u> <u>Will</u>, 491 U.S. at 65 ("conclu[ding] that a State is not a 'person' within the meaning of § 1983"), 70 (extending that holding to "arms of the State" (internal quotation marks omitted)); <u>Bright v. McClure</u>, 865 F.2d 623, 626 (4th Cir. 1989) ("The action against the [clerk of court] in his official capacity is clearly one against the state of North Carolina. . . . Congress has made no

11

move to impose § 1983 liability upon states . . . ."); Grady v. Vickory, Civ. No. 5:11-CT-3212, 2013 WL 12121997, at *1 (E.D.N.C. May 8, 2013) (unpublished) (citing Will and dismissing as frivolous Section 1983 claims against district attorney's office), appeal dismissed, 544 F. App'x 191 (4th Cir. 2013).[3]

---

[3] "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under [Section] 1983 because official-capacity actions for prospective relief are not treated as actions against the State." Will, 491 U.S. at 71 n.10 (internal quotation marks omitted). The Complaint, however, does not seek injunctive relief. (See Docket Entry 1.) In any event, Plaintiff could not maintain a Section 1983 claim for injunctive relief against a state official here, because the Complaint does not allege facts showing that "execution of a [state] policy or custom . . . inflict[ed any] injury," Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992) (internal quotation marks omitted); "instead[, the Complaint] recounts only [Plaintiff's] own personal experiences," Harris v. Guice, No. 1:13CV268, 2015 WL 1401549, at *4 (M.D.N.C. Mar. 26, 2015) (unpublished) (Peake, M.J.) (recommending, even as to "request [for] injunctive relief," that "official capacity claims against [state officials] should be dismissed"), recommendation adopted, 2015 WL 2089691 (M.D.N.C. May 4, 2015) (unpublished) (Beaty, S.J.). (See Docket Entry 1.) Nor could Plaintiff succeed on a Section 1983 claim for damages against the Stokes County District Attorney or the Stokes County Clerk of Court in their individual capacities, in light of applicable immunity doctrines. See, e.g., Briscoe v. LaHue, 460 U.S. 325, 334 (1983) ("The [Supreme] Court has already addressed the question whether § 1983 permits damages recoveries from judges, prosecutors, and other persons acting 'under color of law' who perform official functions in the judicial process. Again, [it] ha[s] found that, in light of common-law immunity principles, § 1983 did not impose liability on these officials."); Ross v. Baron, 493 F. App'x 405, 406 (4th Cir. 2012) ("[A] court clerk is generally entitled to quasi-judicial immunity." (citing Briscoe, 460 U.S. at 334-35)).

## CONCLUSION

Plaintiff's claims suffer from obvious, fatal, legal defects.

**IT IS THEREFORE ORDERED** that the instant Application (Docket Entry 2) is **GRANTED FOR THE LIMITED PURPOSE OF ALLOWING THE COURT TO CONSIDER A RECOMMENDATION OF DISMISSAL.**

**IT IS RECOMMENDED** that this action be dismissed under Section 1915(e)(2)(B) as frivolous and for failure to state a claim.

                                /s/ L. Patrick Auld
                                   **L. Patrick Auld**
                              **United States Magistrate Judge**

October 27, 2025